UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
MAY 17 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-344-GWU

MARY SMITH, PLAINTIFF,

VS: MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT,

INTRODUCTION

Mary Smith brought this action to obtain judicial review of an unfavorable administrative decision on her applications for Disability Insurance Benefits and for Supplemental Security Income. The case is before the Court on cross-motions for summary judgment.

APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of

1

impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(I).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health

and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through

3

the use of the medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the

4

lack of bilateral manual dexterity compromise a person's ability to do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Smith, a 52 year-old former cashier with a high school education, suffered from impairments related to arthralgias, a history of plantar fasciitis, and being status post left arm fracture.[1] (Tr. 15, 20). Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of medium level work. (Tr. 22). Since the claimant would be able to return to her past relevant work, she could not be considered totally disabled. (Tr. 22-23).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

In determining that Smith could return to her past work as a cashier, the ALJ relied upon the opinion of Vocational Expert James Miller. The hypothetical

---

[1] Although the ALJ ultimately included a number of mental restrictions among her findings, she found that Smith's mental problems were not "severe." (Tr. 20).

5

question presented to Miller included an exertional limitation to medium level work along with such non-exertional restrictions as a "limited but satisfactory" ability to relate to co-workers, interact with supervisors, deal with work stresses, maintain attention and concentration, and understand, remember and carry out detailed or complex instructions. (Tr. 398). In response, the witness testified that the plaintiff's past work could still be performed. (Tr. 398). Therefore, assuming that the vocational factors considered by Miller fairly depicted the claimant's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The ALJ dealt properly with the evidence of record relating to Smith's physical condition. Dr. Hughes Helm, an examining consultant, opined that the plaintiff had "no obvious physical impairments to sitting, standing, moving about, lifting, carrying, handling objects, hearing, seeing, speaking, or traveling." (Tr. 213). The ALJ's findings were compatible with this opinion. Dr. David Swan (Tr. 281) and Dr. James Ross (Tr. 283-284), the non-examining medical reviewers, each opined that the claimant's physical limitations were "less than severe." These opinions also buttress the ALJ's findings. Such treating and examining sources as Dr. Yasser Nadim (Tr. 121-149, 197-202), the staff at the Pineville Community Hospital (Tr. 150-170), the staff at Appalachian Regional Healthcare (Tr. 185-196), and Dr. Sharon Colton (Tr. 217-242) did not identify more severe physical restrictions than those found by the ALJ. Mike Napier, a Physician's Assistant, did complete a report noting the existence of far more severe physical limitations than those found by the ALJ. (Tr. 331-333). However, under the Federal regulations, Napier would not be considered an "acceptable medical source" whose opinion would be binding on the ALJ. 20 C.F.R. Section 404.1513. Therefore, substantial evidence supports this portion of the ALJ's

6

denial decision.

Substantial evidence also supports the ALJ's findings with regard to Smith's mental condition. The mental factors of the hypothetical question were essentially compatible with the opinion of Dr. Kevin Eggerman, an examining consultant, who reported that the plaintiff would have a "fair" ability to understand moderately complex or complex instructions, relate to co-workers or supervisors, persist on tasks, and tolerate work-related stress. (Tr. 208). The hypothetical question was also essentially consistent with the mental limitations indicated by Psychologist Ilze Sillers (Tr. 271-272) or Lea Perritt (Tr. 276-277), the non-examining medical reviewers. The claimant's treating source at the Cumberland River Comprehensive Center did not report the existence of more severe specific mental limitations than those presented in the hypothetical question. (Tr. 291-310). Smith's Global Assessment of Functioning (GAF) was rated by the Cumberland River staff as 55. (Tr. 308). Such a GAF suggests the existence of "moderate" mental limitations compatible with the ALJ's findings according to the American Psychiatric Association's <u>Diagnostic and Statistical Manual for Mental Disorders</u> (4th Ed.-Revised, 1994). Therefore, the hypothetical question fairly characterized Smith's mental condition as well.[2]

Smith's mental condition was also evaluated by Psychologist Robert Spangler. (Tr. 311-320). Spangler completed a Mental Medical Assessment of Ability to do Work-Related Activities Form. (Tr. 318-320). When these restrictions were presented to the vocational expert, he indicated that such a person would not be employable due to having a seriously limited ability to

---

[2]Since the hypothetical question did fairly characterize the plaintiff's mental condition, any error on the part of the ALJ in finding that the claimant did not suffer from a "severe" mental impairment is harmless.

7

demonstrate reliability. (Tr. 399). The ALJ curiously stated that she was giving this report "significant weight." (Tr. 18). However, she obviously did not intend to credit the severe restrictions which the ALJ found to be totally disabling. Spangler rated the plaintiff's GAF at 65 in the text of his report. (Tr. 315). Such a GAF suggests the existence of only "mild" psychological symptoms and is clearly inconsistent with the examiner's findings on his assessment. Spangler also diagnosed only a "mild" anxiety disorder and low <u>average</u> intelligence noting that she had related well with her and that she had the judgment to handle her own financial affairs. (Tr. 314). Thus, the ALJ would appear to have intended to credit only Spangler's textual report, which appeared consistent with the mental restrictions ultimately found by the ALJ. Furthermore, as a one-time examiner, Spangler's opinion was offset by that of the equally-placed Dr. Eggerman. Therefore, any error on the part of the ALJ with regard to Dr. Spangler's report appears harmless.

Dr. Eggerman did not define "fair" in his report. The ALJ interpreted his report to mean "ability in this area is limited but satisfactory." Smith notes that "fair" was defined on <u>Spangler's</u> assessment form as "ability in this area is seriously limited but not precluded." (Tr. 318). This is a much more severe limitation. The plaintiff asserts that in the absence of a definition of "fair" from Dr. Eggerman, the ALJ was bound by that of Spangler since it was the only definition of the term contained in the record. The undersigned does not agree with the claimant's assertion. Just because Spangler may have used this definition of the term does not mean Dr. Eggerman also used it in this fashion since the examiners completed independent mental status examinations. The Court takes judicial notice of the fact that "fair" is typically defined on assessment forms completed by agency consultants as "ability in this area is limited but

8

satisfactory" and has been for several years. As a frequent agency consultant, Dr. Eggerman would likely be aware that this was the preferred definition of the term and to have used it in this manner. Furthermore, the doctor rated the claimant's GAF at 60 to 65, suggesting the existence of only "mild to moderate" mental limitations (Tr. 208), consistent with the less restrictive definition of "fair" adopted by the ALJ. As previously noted, Spangler's restrictions appear inconsistent with his GAF rating of 65. Therefore, under these circumstances, the ALJ could reasonably adopt the less restrictive definition of the term "fair" and the Court must reject Smith's argument.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment and deny that of the plaintiff. A separate Judgment and Order will be entered simultaneously consistent with this opinion.

This the ___17___ day of May, 2006.

*G. Wix Unthank*
G. WIX UNTHANK
SENIOR JUDGE